TO BE CONFORMED

SCHEPER KIM & HARRIS LLP
MARC S. HARRIS (State Bar No. 136647)
mharris@scheperkim.com
AMOS A. LOWDER (State Bar No. 269362)
alowder@scheperkim.com
601 West Fifth Street, 12th Floor
Los Angeles, CA 90071-2025
Telephone: (213) 613-4655
Facsimile: (213) 613-4656

Attorneys for Relator David Ji

FILED
CLERK, U.S. DISTRICT COURT
SEP 15 2014
CENTRAL DISTRICT OF CALIFORNIA
BY                        DEPUTY

# UNITED STATES DISTRICT COURT

## CENTRAL DISTRICT OF CALIFORNIA, WESTERN DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA *ex rel.* DAVID JI,<br><br>  Plaintiff,<br><br>v.<br><br>PACIFIC CHEMICAL INTERNATIONAL, INC.; IMP INTERNATIONAL, INC. dba UNICHEM ENTERPRISES; CHENTAO HANG<br>  aka TONY HANG<br>  aka STEVEN HANG<br>  aka TONY HUANG; and DOES 1 through 50,<br><br>  Defendants. | CASE NO. CV14-7203 MWF PJWx<br><br>**COMPLAINT FOR VIOLATIONS OF FEDERAL FALSE CLAIMS ACT**<br><br>**FILED UNDER SEAL**<br>(31 U.S.C. § 3729, *et seq.*)<br><br>**JURY TRIAL DEMANDED** |

COMPLAINT

§ 3732(a) and 28 U.S.C. § 1391(b), because a substantial part of the events or omissions giving rise to the claim occurred in this district or a defendant may be found here, and acts proscribed by 31 U.S.C. § 3729 occurred in this district.

3. As required by 31 U.S.C. § 3730(b)(2), relator will be serving the United States Attorney General and the United States Attorney for the Central District of California with copies of this complaint along with written disclosures of material evidence related to the complaint. The disclosure statement supports the allegations herein of false claims against the United States by the defendants.

4. As required by the False Claims Act, this complaint is being filed under seal and shall not be served on the defendants until the Court so orders.

## PARTIES

5. Relator David Ji ("Relator") is a resident of California and a United States citizen. Relator is over eighteen (18) years of age, is not under any legal or other disability, and is the original source of the allegations delineated herein, which he bases upon his own personal knowledge, investigation and observation. Relator brings this civil action for violation of 31 U.S.C. § 3729, *et seq.* for himself and on behalf of the United States Government, pursuant to 31 U.S.C. §§ 3730(b)(1) and (b)(2).

6. Upon information and belief, defendant Pacific Chemical International, Inc. ("Pacific Chemical") is a corporation organized and existing under the laws of California. Pacific Chemical is in the business of importing food additives into the United States from China.

7. Upon information and belief, defendant IMP International, Inc. dba UniChem Enterprises ("UniChem") is a corporation organized and existing under the laws of California, with its principal place of business in Ontario, California. UniChem is in the business of selling and distributing food additives.

8. Defendant ChenTao Hang ("Hang"), also known as Tony Hang, Steven

Hang, and Tony Huang is the principal of Pacific Chemical and also of UniChem. Relator is informed and believes that Hang resides in Irvine, California.

9. The true names and capacities of the defendants named above as DOES 1 through 50, inclusive, are unknown to Relator, who will seek leave of Court to amend the complaint to allege the names and capacities of such defendants, together with any additional charging allegations, at such time as they are ascertained.

**SUMMARY OF DEFENDANTS' SCHEME TO EVADE CUSTOMS DUTIES**

10. From at least 2009 to at least July 2014, Defendants engaged in a scheme to smuggle literally tons of Chinese glycine into the United States, evading millions of dollars in duties that should have been paid to the United States Government. During this time period, Chinese glycine was subject to payment of antidumping duties to United States Customs & Border Protection ("CBP") at a rate of either 155.89% *ad valorem* (between 1995 and March 2011) or 453.79% *ad valorem* (after March 2011) at the time of entry into the United States. Rather than properly declare the Chinese glycine and pay the required duties, Defendants mislabeled the Chinese glycine and submitted false customs documents that intentionally misdescribed the imported product as a product that was not subject to duty. Relator is informed and believes that, through this scheme, Defendants evaded more than $11 million dollars in duties owed to the United States.

11. Defendants carried out their fraud with the assistance of Wuxi Maochang International Import and Export Co., Ltd. ("Wuxi Maochang"), a Chinese export company controlled by defendant Hang and owned by defendant Hang's father. Prior to shipping the undeclared glycine to the United States, Wuxi Maochang mislabeled the glycine as glucosamine and falsely declared the product to Chinese export officials. Defendant Pacific Chemical and others imported the undeclared glycine into the United States, submitting false documents to CBP and others to facilitate the smuggling of the glycine and avoidance of duties. After the

product cleared customs, Defendants relabeled the glycine in their domestic facilities and, at times, Wuxi Maochang arranged for the manufacturers of the Chinese glycine to send the original labels to Defendants to be applied to the packages. Defendants UniChem and Hang then marketed and sold the smuggled Chinese glycine to domestic customers at below-market prices.

## GLYCINE ANTIDUMPING DUTIES

12. Glycine is a free-flowing crystalline material, like salt or sugar. Glycine is used for pharmaceutical applications and as a food additive. Glycine is classifiable under Harmonized Tariff Schedule of the United States ("HTSUS") subheading: 2922.49.4020, and is subject to regular customs duties at the rate of 4.2% *ad valorem*.

13. In addition to regular customs duties, from time to time, the United States Department of Commerce ("DOC"), in conjunction with the United States International Trade Commission ("ITC"), will impose antidumping duties on foreign-made products to remedy the dumping of those products on the U.S. market. Dumping occurs when a foreign producer sells a product for export to the United States at a price that is below that product's normal value, or at a price that is lower than its cost of production, and the ITC finds that those low-priced exports cause material injury to domestic manufacturers of a like product. The United States considers dumping an unfair trade practice.

14. Since at least March 29, 1995, the DOC has imposed an antidumping duty on imports of glycine from China. Between 1995 and 2011, the DOC imposed a duty of 155.89 % *ad valorem* on imports of glycine originating from China. In 2000, 2005, and 2010, the DOC and the ITC conducted five-year reviews of the antidumping duty order regarding glycine from China. The DOC and ITC determined that revocation of the order would likely lead to continuation or recurrence of material injury to the domestic industry, and continued to impose an

antidumping duty of 155.89% on imports of glycine from China.

15. On April 8, 2013, the DOC increased the antidumping duty rate on imports of glycine from China to 453.79% *ad valorem*, which was nearly three times the old duty of 155.89 %. The DOC made the new rate of 453.79% applicable to imports after March 1, 2011.

16. CBP, which is an agency of the Department of Homeland Security, is responsible for the collection and assessment of all customs duties, including antidumping duties.

17. A person importing a product into the United States for consumption is required to file a customs declaration with CBP, known as the CBP Form 7501, for each import shipment. The declaration on the CBP Form 7501 must state the description of the product, the HTSUS subheading, the duty rate, value, country of origin, and total amount of import duties that must be lawfully paid on the imported product. The importer is obligated to state on the CBP Form 7501 any antidumping duty case number and antidumping duty rate applicable to the imported product. The total duties due, including antidumping duties, must be paid to CBP at the time the Form 7501 is filed. CBP relies upon the information on the CBP Form 7501 to ensure collection and assessment of the lawfully correct amount of import duties.

18. As detailed herein, Defendants have fraudulently avoided paying more than $11 million in customs duties by knowingly making, or causing to be made, materially false statements regarding product identification and HTSUS classification on the CBP Form 7501, and by knowingly failing to state the proper antidumping duty information on the CBP Form 7501, and/or the packaging for imports of glycine originating from China.

**DEFENDANTS' IMPORTATION AND MISLABELING OF GLYCINE**

19. At least since 2009, Defendants UniChem and Hang have been marketing and selling Chinese glycine to U.S. customers. Defendant UniChem

advertises glycine on its website, and directly markets, through e-mail and other communications, Chinese glycine to its customers in the United States. Defendants obtain this glycine from manufacturers in China, and imports the glycine with the assistance of Wuxi Maochang and defendant Pacific Chemical. Wuxi Maochang is the primary exporter of the glycine that Defendants import from China.

20.  According to Chinese export regulations, Chinese exporters are required to report to Chinese officials shipment details of products exported from China. This information includes identification of the product shipped, per unit pricing information, shipped volume and declared value. Although Wuxi Maochang has exported over 1,500 metric tons of glycine to the United States since 2009, Wuxi Maochang did not declare a single shipment of glycine to Chinese officials.

21.  Nor did Defendants declare these glycine shipments to United States customs officials upon importation into the United States. Documentation is available from import data firms that subscribe to CBP's Automated Manifest System ("AMS"). Datamyne and Zepol are two such systems. These records are in the form of ocean bills of lading ("B/L") describing all products entering ocean ports of the United States. A search of AMS records through Datamyne and Zepol reveals that Defendants did not declare a single shipment of glycine to CBP between 2009 and July 2014. AMS records do not reflect the importation of glycine because the shipments of Chinese glycine imported by Defendants were falsely labeled and misdescribed to CBP as glucosamine, a product that was exempt from duty during the relevant time period.

22.  Glucosamine is an amino sugar found in the exoskeletons of crustaceans and other arthropods. Glucosamine is commonly used in dietary supplements. Glucosamine is classifiable under HTSUS subheading 2932.99.9010, and is exempt from duty under HTSUS General Note 13 as a product listed on the Pharmaceutical Appendix of the tariff schedules.

23. Chinese export records reveal that, from January 2009 to July 2014, Wuxi Maochang exported more than 1,654 metric tons of product labeled as glucosamine for delivery to Los Angeles, Long Beach, and New York. As described more fully below, the vast majority of the product labeled as glucosamine was in fact glycine or some other dutiable product.

24. First, the export records reveal that Wuxi Maochang placed widely disparate values on the exported product identified as "glucosamine" during the relevant time period, ranging from less than $2 per kilogram to more than $300 per kilogram. The export records also reflect numerous entries for the same product, with varying weights and prices. For example, on May 26, 2014, Wuxi Maochang claims to have exported the following items in a single shipment:

| Product Description | Price per kg | Weight |
|---|---|---|
| Glucosamine HCl99.8%, water0.2%\|raw material for the synthesis of antibiotics | $2.80 | 23,000 kg |
| Glucosamine HCl99.8%, water0.2%\|raw material for the synthesis of antibiotics | $8.86 | 800 kg |
| Glucosamine HCl99.8%, water0.2%\|raw material for the synthesis of antibiotics | $11.22 | 3,000 kg |
| Glucosamine HCl99.8%, water0.2%\|raw material for the synthesis of antibiotics | $16.98 | 500kg |

If, in fact, each of these line entries on Wuxi Maochang's export documents described the same product, there would be no basis to break up the amounts or value the products differently.

25. The declared values provided by Wuxi Maochang on the Chinese export documents further support the claim that Defendants were importing glycine mislabeled as glucosamine. During the relevant time period, the domestic price for

1  glucosamine ranged from approximately $10.00 to $12.75 per kg. Only
2  approximately 3% of the 1,654.63 metric tons of the "glucosamine" exported by
3  Wuxi Maochang was valued within this price range.
4      26. The values listed by Wuxi Maochang instead suggest that the vast
5  majority of the "glucosamine" exported from China was, in fact, glycine. The unit
6  price for glycine imported from China during the relevant time period was generally
7  around $2 per kg. Chinese customs records reveal that approximately 1,313 of the
8  1,655 metric tons (approximately 80%) of the "glucosamine" exported by Wuxi
9  Maochang for delivery to Defendants, was valued in the range of $1.75 to $3 per
10 kilogram, suggesting that the exported product was glycine. The remaining
11 "glucosamine" was likely another dutiable or prohibited product mislabeled as
12 glucosamine, such as rHGH.
13     27. Defendants sought to further hide their smuggling scheme by
14 concealing the fact that Wuxi Maochang was the shipper of the Chinese glycine on
15 import documents submitted to CBP. Chinese export data shows that Wuxi
16 Maochang exported large quantities of "glucosamine" and other products into the
17 United States in 2014. AMS, however, does not reveal *any* shipments of *any*
18 products by Wuxi Maochang in 2014. It appears that Defendants, through Wuxi
19 Maochang, are importing "glucosamine" from China, but disguising, through false
20 names or other methods, the shipper and consignee information for their shipments.
21 Nevertheless, AMS data proves that Wuxi Maochang's export shipments are
22 reaching the United States.
23     28. Absent accurate shipper and consignee information identifying
24 Defendants or Wuxi Maochang, the shipping dates, product descriptions, and
25 product quantities reported to Chinese export officials can be used to identify the
26 corresponding AMS import records. The Chinese export data lists each product
27 entry in a separate row, and identifies the shipping date, destination, product
28

description, unit price, and net weight. Datamyne and Zepol reports of AMS records describe the arrival date, production description, gross weight, and number of pieces for each shipment. AMS records are organized by container, with all of the products shipped in the container listed together along with the gross weight of the container and the total number of pieces in the container. On average, it takes roughly two weeks, by boat, for a shipment from China to reach either Los Angeles or Long Beach. It typically takes four to five weeks, by boat, for a shipment from China to reach New York or New Jersey.

29. Chinese export data reflects that, on May 26, 2014, Wuxi Maochang exported the following shipment destined for the Port of New York:

| Product Description | Net Weight | Price per kg |
|---|---|---|
| Glucosamine HCL | 23,000 kg | $2.80 |
| Glucosamine HCL | 800 kg | $8.86 |
| Glucosamine HCL | 3,000 kg | $11.22 |
| Glucosamine HCL | 500 kg | $16.98 |
| Tribulus Terrestris Extract | 3,000 kg | $5.80 |
| Creatine Monohydrate | 2,000 kg | $3.60 |

30. AMS import data reflects that, on June 28, 2014, a shipment bearing B/L UVCQSHFY14054116, arrived at the Port of New York with the following contents:

| Product Description | Pieces | Gross Weight |
|---|---|---|
| Glucosamine<br>Tribulus Terrestris Extract<br>Creatine Monohydrate | 1,292 | 34,884 kg |

31.     Using the shipping date, arrival date, product descriptions and weight information reflected in the Chinese data and AMS, it is clear that the May 26, 2014 export of "glucosamine" and other products referred to in paragraph 29 corresponds with the June 28, 2014 import reflected in paragraph 30.  First, the shipment took approximately five weeks to reach New York from China.  Second, the product descriptions on the two shipments match.  Third, the net weight of the shipments also match.  The total net weight of the May 26, 2014 export was 32,300 kg.  The standard net weight for a "piece" of shipped product is 25 kilograms, which is consistent with Defendants domestic sales of Chinese glycine.  The June 28, 2014 import contained 1,292 pieces.  At 25 kilograms per piece, the net weight of this import was 32,300 kg – the exact same weight as the export reflected in paragraph 29.

32.     Defendants' other shipments reflect the same connection to Wuxi Maochang exports.  For example, Chinese export data reflects that, on June 24, 2014, Wuxi Maochang exported the following shipment destined for the Port of Los Angeles:

| Product Description | Net Weight | Price per kg |
|---|---|---|
| Glucosamine HCL | 25,000 kg | $2.80 |
| Glucosamine HCL | 100 kg | $8.86 |
| Creatine Monohydrate | 9,500 kg | $3.60 |

33.     AMS import data reflects that 18 days later, on July 11, 2014, a shipment bearing B/L YKTLSYA1406338, arrived at the Port of Los Angeles with the following contents:

| Product Description | Pieces | Gross Weight |
|---|---|---|
| Glucosamine Creatine Monohydrate | 1,384 | 37,368 kg |

34. Using the shipping date, arrival date, production descriptions and weight information reflected in the Chinese data and AMS, it is clear that the June 24, 2014 export of "glucosamine" and other products referred to in paragraph 32 corresponds with the July 11, 2014 import reflected in paragraph 33. The shipping and arrival dates correspond to the typical duration of a trip from China to Los Angeles, the product descriptions match, as do the net weights of the shipments. The total net weight of the June 24, 2014 export was 34,600 kg. The July 11, 2014 import contained 1,384 pieces, which yields an identical figure, a net weight of 34,600 kg.

35. Virtually all of the Wuxi Maochang exports correspond in this manner to shipments of "glucosamine" imported into the United States by defendant Pacific Chemical and other shippers. Thus, although Wuxi Maochang is not listed in AMS as the shipper or consignee of record for any product imported into the United States in 2014, it is clear that the Wuxi Maochang shipments were imported by defendant Pacific Chemical and others.

## DEFENDANTS' SALE OF CHINESE GLYCINE IN THE U.S.

36. Defendants' smuggling scheme is further evidenced by their promotion and sale of Chinese glycine in the United States. As noted, defendant UniChem advertises glycine for sale on its website and through other marketing materials. Additionally, at least two domestic customers informed Relator of several specific sales of Chinese glycine by Defendants UniChem and Hang to U.S. customers in the past three months.

### Sales to Watson Industries

37. For example, in July 2014, Defendants delivered 400 kilograms of Chinese glycine to a domestic distributor, Watson Industries, Inc. The manufacturer of the glycine is listed on the label as Shijiazhuang Zexing Amino Acid Co. Ltd. ("Zexing"). Zexing is a subsidiary of the Zexing Chemical Group, which is a

Chinese manufacturer based in Luancheng, China. According to Zexing's website, glycine is one of the products the company produces. Based on a Certificate of Analysis ("COA") provided to the distributor by defendant UniChem, the glycine was produced in China in April 2014.

38. The labels on the packages of glycine purchased by Watson Industries show clear signs of tampering. The labels themselves are torn and portions of a seal and gel-like residue, likely glue from the original label, can be found on the packaging. On information and belief, Defendants reached agreements with manufacturers in China to provide the original glycine labels to Wuxi Maochang or to ship the labels directly to Defendants. Defendants removed the glucosamine labels when the glycine arrived at UniChem's Ontario, California facility. Defendants then affixed the manufacturers' original glycine labels to the product.

39. On July 21, 2014 and August 21, 2014, Watson Industries received two additional COAs from UniChem regarding Chinese glycine available for sale domestically. According to the COAs the product was manufactured in June 2014.

40. On or about August 21, 2014, Watson Industries purchased 1200 kg of Chinese glycine from defendant UniChem.

**Sales to NatureGen**

41. On or about August 12, 2014, Eric Phaykaisorn, a regional sales manager for UniChem, offered 1,000 kilograms of food grade glycine to NatureGen, a supplier and producer of nutraceutical products. Phaykaisorn quoted NatureGen a price of $7.50 per kilogram for glycine in stock in Los Angeles. To assure NatureGen that UniChem did, in fact, have Chinese glycine available, Phaykaisorn provided NatureGen with a COA. The COA was prepared on UniChem letterhead and identifies the product as "glycine food grade." The COA states the country of origin is China, and that a 15,000 kg batch of glycine was produced on June 11, 2014. The COA was signed by Angelina Liu, a product manager for UniChem, and

dated June 24, 2014.

42. On or about August 14, 2014, NatureGen received an invoice from defendant UniChem for 500 kg of food grade glycine. The accompanying COA identifies the country of origin as China and that the 20,000 kg batch of glycine was produced on May 27, 2014. The COA was signed by Angelina Liu, a product manager for UniChem, and dated June 24, 2014. The product itself carried a UniChem Straight Bill of Lading indicating that the shipment consisted of 1 pallet containing 20 drums of the product.

### Defendants smuggled into the U.S. the Chinese glycine sold to Watson and NatureGen

43. Despite the fact that, in July and August 2014, UniChem was selling Chinese glycine that was manufactured in June 2014 (and must have been imported into the United States after that time), AMS records do not reveal any shipments of glycine from China during June or July 2014. Thus, the glycine being sold by UniChem was clearly smuggled into the United States.

44. Defendants' prices are well below market for Chinese glycine, and Defendants could not have purchased Chinese glycine from another importer and sold it for a profit at the prices quoted to Watson and NatureGen. Defendants offered their illicit glycine for $7.50 to $8.25 per kg. If Defendants had properly declared the product upon arrival in the United States, they could not turn a profit offering the glycine for sale at such low prices – the antidumping duty alone for glycine is roughly $9 per kg. The only explanation for Defendants' below-market prices is a deliberate evasion of their duty to declare the Chinese glycine and pay the applicable antidumping duties and customs duties.

### DEFENDANTS' FALSE STATEMENTS

45. Importers typically engage the services of agents called "customs brokers" to prepare and file the declaration on the CBP Form 7501 for import

shipments. Customs brokers are licensed by CBP. From January 1, 2009 to July 31, 2014, Defendants sent their customs brokers invoices and/or packing lists for shipments of glycine, and other products, that fraudulently described the product as glucosamine. Using these false documents, the customs brokers, acting as the agents of Defendants, electronically filed U.S. Customs entry data on the Form 7501 from 2009 to July 31, 2014 that falsely declared that the glycine, and other products, were glucosamine. The Form 7501 declarations also falsely omitted the antidumping duty case number and duty rate applicable to Chinese glycine. As a consequence, Defendants did not pay, and have never paid, the required antidumping duties.

46. By providing the false packaging information and false invoices and/or packing lists, Defendants made or caused to be made false records or statements material to their obligation to pay money to the United States.

## FIRST CAUSE OF ACTION
### Violation of the False Claims Act; 31 U.S.C. §3729(a)(1)(G)

47. The preceding paragraphs are re-alleged and incorporated by reference as if fully set forth herein.

48. Relator, as the original source of information regarding Defendants' violations of the False Claim Act, has direct and independent knowledge of the information on which the allegations contained herein are based.

49. Prior to the arrival date of each shipment from China imported into the United States, Defendants fraudulently marked certain contents of those shipments as glucosamine when, in fact, the products were glycine and other prohibited or dutiable products.

50. Defendants fraudulently made, or caused to be made, invoices, packing lists, and other documents that falsely identified the glycine as "glucosamine" or other products.

51. Defendants made or caused to be made through its agents fraudulent statements that misdescribed the products on the CBP Form 7501 customs declarations.

52. At all times material to this Complaint, Defendants either had actual knowledge of the falsity, acted in deliberate ignorance of the truth or falsity, or acted in reckless disregard of the truth or falsity of the records and statements submitted regarding products imported into the United States.

53. Defendants' false statements and records had a natural tendency to influence the CBP to assess Defendants a lower (or no) duty to import glycine from China into the United States.

54. By fraudulently mislabeling products imported into the United States, fraudulently misdescribing products on invoices, packing lists and other documents, and making or causing to be made fraudulent statements that misdescribed the products on the CBP Form 7501 customs declarations, Defendants have knowingly concealed and knowingly and improperly avoided or decreased an obligation to pay or transmit money or property to the United States.

55. Defendants' false records or statements, concealment, and avoidance violate 31 U.S.C. § 3729. Through their violations of 31 U.S.C. § 3729, Defendants have obtained entry and release of glycine and other products into the United States without paying amounts due to the United States. Defendants have knowingly and recklessly damaged the United States in an amount to be determined at trial, but believed to be in excess of $11 million.

### SECOND CAUSE OF ACTION
### Conspiracy to Violate the False Claims Act, 31 U.S.C. § 3729(a)(1)(C)

56. The preceding paragraphs are re-alleged and incorporated by reference as if fully set forth herein.

57. Defendants acted in concert, among themselves and with others, to

violate the False Claims Act by knowingly making, using, or causing to be made or used, a false record or statement material to their obligation to pay money to the United States by mislabeling glycine and other products they imported into the United States as glucosamine.

58. Defendants also acted in concert, among themselves and with others, to violate the False Claims Act by knowingly concealing or knowingly and improperly avoiding or decreasing their obligation to pay or transmit money or property to the United States by purposefully mislabeling glycine and other products imported into the United States from China.

59. Defendants committed the overt acts described above in furtherance of the conspiracy, including but not limited to, stating a false descriptions of goods and merchandise on required customs forms, concealing and avoiding their obligation to pay antidumping duties, and fraudulently marking the glycine packaging as glucosamine.

60. Defendants' conspiracy violates 31 U.S.C. § 3729 (a)(1)(C), by which Defendants obtained entry and release of their glycine into the United States without paying the amounts due to the United States. Defendants have knowingly or recklessly damaged the United States in an amount to be determined at trial, but believed to be excess of $11 million.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff United States *ex rel* David Ji prays for the following:

1. An award of treble damages, civil penalties, expenses, fees, and costs against Defendants, jointly and severally, in accordance with 31 U.S.C. § 3729 *et seq.* for Defendants' violations of 31 U.S.C. § 3729(a)(7);

2. An award of treble damages, civil penalties, expenses, fees, and costs against Defendants, jointly and severally, in accordance with 31 U.S.C. § 3729 *et seq.* for Defendants' violations of 31 U.S.C. § 3729(a)(3); and

1        3.     An award of such other and further relief, legal or equitable, which the
2 Court deems just and proper.

3
4 DATED: September 15, 2014     SCHEPER KIM & HARRIS LLP
                                                   MARC S. HARRIS
5                                                          AMOS A. LOWDER

                                                     By: *[signature]* Marc S. Harris /AL
                                                           Marc S. Harris
                                                           Attorneys for Relator David Ji

## PROOF OF SERVICE

STATE OF CALIFORNIA, COUNTY OF LOS ANGELES

At the time of service, I was over 18 years of age and **not a party to this action**. I am employed in the County of Los Angeles, State of California. My business address is 601 West Fifth Street, 12th Floor, Los Angeles, California 90071-2025.

On September 15, 2014, I served true copies of the following document(s) described as:

**COMPLAINT FOR VIOLATIONS OF FEDERAL FALSE CLAIMS ACT [FILED UNDER SEAL] (31 U.S.C. § 3729, *et seq.*)**

**RELATOR'S DISCLOSURE STATEMENT**

on the interested parties in this action as follows:

**SEE ATTACHED SERVICE LIST**

**BY FEDEX:** I enclosed said document(s) in an envelope or package provided by FedEx and addressed to the persons at the addresses listed in the Service List. I placed the envelope or package for collection and overnight delivery at an office or a regularly utilized drop box of FedEx or delivered such document(s) to a courier or driver authorized by FedEx to receive documents.

I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct and that I am employed in the office of a member of the bar of this Court at whose direction the service was made.

Executed on September 15, 2014, at Los Angeles, California.

*/s/ June Hibino*
June A. Hibino

|    |                                           |
|----|-------------------------------------------|
| 1  | **SERVICE LIST**                          |
| 2  | Eric H. Holder, Jr.                       |
| 3  | United States Attorney General            |
|    | U.S. Department of Justice                |
| 4  | 950 Pennsylvania Avenue, NW               |
| 5  | Washington, D.C. 20530-0001               |
| 6  | United States Attorney's Office           |
| 7  | Central District of California            |
|    | 312 North Spring Street, Suite 1200       |
| 8  | Los Angeles, CA 90012                     |
| 9  |                                           |
| 10 |                                           |
| 11 |                                           |
| 12 |                                           |
| 13 |                                           |
| 14 |                                           |
| 15 |                                           |
| 16 |                                           |
| 17 |                                           |
| 18 |                                           |
| 19 |                                           |
| 20 |                                           |
| 21 |                                           |
| 22 |                                           |
| 23 |                                           |
| 24 |                                           |
| 25 |                                           |
| 26 |                                           |
| 27 |                                           |
| 28 |                                           |